UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO.: _____

| | |
|---|---|
| OHIO SECURITY INSURANCE COMPANY, as subrogee of Nobles Restaurants LLC, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) |
| FIRE CONTROL SYSTEMS, INC., | )<br>) |
| Defendant. | ) |

## COMPLAINT

Comes now, Plaintiff OHIO SECURITY INSURANCE COMPANY, as subrogee of Nobles Restaurants LLC, by and through its undersigned attorneys, complaining of the Defendant Fire Control Systems, Inc. and alleges the following:

## THE PARTIES

1. Plaintiff Ohio Security Insurance Company (hereinafter referred to as "Ohio Security") is a corporation duly organized and existing under the laws of the State of Massachusetts, having its principal place of business at 175 Berkeley Street, Boston, Massachusetts. Ohio Security is in the business of writing property and casualty insurance coverage, including fire loss coverage, and is duly licensed and authorized to conduct business in the State of North Carolina.

2. Plaintiff's subrogor Nobles Restaurants LLC (hereinafter referred to as "Nobles") is a limited liability company organized and existing under the laws of the State of North Carolina with its principal place of business at 2225 Freedom Drive, Suite 1, Charlotte, North

Carolina 28208. At all relevant times, Nobles owned and operated a restaurant known as Rooster's Wood Fired Kitchen located at 150 North College Street, Charlotte, North Carolina.

3. At all times relevant hereto, Ohio Security provided fire insurance coverage to Nobles Restaurants LLC against losses from certain perils and causing certain damages to the Rooster's Wood Fired Kitchen Restaurant and under which said insurance policy was in full force and effect.

4. Defendant Fire Control Systems, Inc. ("FCS") is a North Carolina corporation with its principal place of business at 2508 Catherine Lake Road, Richlands, North Carolina 28574. At all times relevant hereto, Defendant FCS was engaged in the commercial hood and duct cleaning business. Fire Control Systems, Inc. can be served with process by serving its registered agent at: Richard G. Baker, 2508 Catherine Lake Road, Richlands, North Carolina 28574.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332, because the matter in controversy exceeds $75,000.00, exclusive of interest and costs, and is between citizens of different states in that the citizenship of plaintiff is completely diverse from the citizenship of the defendant.

6. Venue is appropriate in the United States District Court for the Western District of North Carolina pursuant to 28 U.S.C. §1391, in that the events and acts and omissions giving rise to this action occurred in the Western District of North Carolina.

## FACTUAL ALLEGATIONS

7. On September 30, 2019, a fire occurred at the Rooster's Wood Fired Kitchen restaurant located at 150 North College Street, Charlotte, North Carolina.

8. The restaurant is located on the ground floor of the Bank of America Tower, a 60-story high-rise office building in downtown Charlotte.

9. At all relevant times, portions of the restaurant's cooking equipment consisted of a solid fuel chicken grill/rotisserie and oven.

10. The North Carolina Fire Code and NFPA 96 set forth procedures and schedules for inspecting and cleaning commercial kitchen exhaust hoods and supporting ductwork that service solid fuel grills and ovens.

11. In or about April 2019, Nobles verbally retained defendant FCS to perform the scheduled monthly inspections and chemical steam cleaning of the restaurant's kitchen exhaust hoods and ductwork and retained FCS to perform semi-annual fire system and suppression system inspections.

12. FCS knew, or should have known, that the scheduled monthly inspections and chemical steam cleaning of the restaurant's kitchen exhaust hoods and ductwork and the semi-annual fire system and suppression system inspections it would perform needed to be conducted in accordance with the North Carolina Fire Code and NFPA 96.

13. At the time it agreed to perform its work at the restaurant, FCS also knew, or should have known, that excessively grease-laden ductwork posed a distinct fire hazard and that the purpose of its monthly cleanings and inspections was for the purpose of eliminating that fire hazard.

14. At the time it agreed to perform its work at the restaurant, FCS also knew, or should have known, that Nobles was relying upon it to properly perform its work so that the fire hazard from excessively grease-laden ductwork would be eliminated and FCS intended for Nobles to rely upon its representations that it would properly perform the work.

15. In the months after it was retained until the date of the fire on September 30, 2019, FCS performed the monthly inspections and cleanings at the restaurant and after each cleaning represented to Nobles that it had completely and thoroughly cleaned the entire hood and duct work and FCS intended for Nobles to rely upon these representations.

16. On the night of Sunday September 29, 2019, FCS reportedly cleaned the exhaust hoods and ductwork for the restaurant and thereafter represented to Nobles that it completely and thoroughly cleaned the entire hood and duct work.

17. Thereafter, on the morning of September 30, 2019, FCS submitted an invoice to Nobles representing that it cleaned the entire duct work and hood system to the restaurant.

18. FCS also submitted photographs to Nobles that it represented showed the condition of a thoroughly cleaned hood and duct work.

19. The photographs provided by FCS did not reflect the condition of the entire duct work after it was completed and instead reflected only sections of the duct work that had been cleaned to bare metal.

20. FCS presented these sample photographs to Nobles with the intent that Nobles accept them and rely upon them as representative of the actual condition of the entire hood and duct work after FCS had supposedly inspected and cleaned it.

21. Although FCS represented to Nobles that it inspected and cleaned the entire hood and duct work, it knew that it had not cleaned the entire duct work and hood system to bare metal not only on the evening of September 30, 2019, but also during its previous monthly cleanings.

22. FCS knew or should have known that by not fully cleaning the entire hood and duct work each month, excess grease would accumulate in the duct work.

4

23. Although FCS represented to Nobles that it cleaned the entire hood and duct work, it knew that the excessively grease-laden ductwork posed a distinct fire hazard as FCS had not adequately cleaned the exhaust duct work.

24. On or about September 30, 2019, at approximately 2:30 p.m. a fire originated in the horizontal duct work servicing the restaurant's solid fuel chicken grill/rotisserie and oven. The fire spread from the ductwork and damaged Nobles' business personal property and business interests.

25. The fire spread and damaged Nobles' property because the duct work servicing the subject cooking line equipment was excessively dirty with grease and creosote.

26. As a direct and proximate result of the fire and resulting damages, pursuant to its policy of insurance with Nobles Restaurant Group, Ohio Security paid to Nobles an amount in excess of Three Million and no/100 Dollars ($3,000,000.00). As a result of its payments, Plaintiff Ohio Security is subrogated to the rights of Nobles to recover damages from third-persons, to the extent of the payments made by Plaintiff Ohio Casualty.

## COUNT I – NEGLIGENCE

27. Plaintiff re-alleges Paragraphs 1 through 26 and incorporates the same herein by reference.

28. Defendant FCS owed a duty to exercise reasonable care in the inspection and cleaning and inspection of the restaurant's hood and ductwork.

29. Defendant FCS, by reason of the conduct of its agents, employees, and representatives, breached its duty of care by committing one or more of the following negligent acts or omissions, including, but not limited to, the following:

    (a) Defendant failed to properly inspect and clean the restaurant's hood and ductwork;

5

(b) Defendant failed to comply with the applicable building and fire codes and industry standards, including the North Carolina Fire Code and NFPA 96;

(c) Defendant created or permitted dangerous conditions to exist at the restaurant;

(d) Defendant failed to warn the restaurant of the dangerous condition with the restaurant's hood and ductwork; and

(e) otherwise failing to use due care under the circumstances.

30. As a direct and proximate result of the negligence, carelessness and negligent acts and omissions of Defendant FCS, its agents, servants, subcontractors and employees, Plaintiff suffered damages in an amount in excess of Three Million and no/100 Dollars ($3,000,000.00).

WHEREFORE, Plaintiff seeks relief as follows:

1. That this Court enter Judgment in favor of Plaintiff and against Defendant FCS in the amount in excess of Three Million and no/100 Dollars ($3,000,000.00), together with pre-judgment interest as allowed by law.

2. That Plaintiff recover its costs from defendant.

3. That this Court impanel a trial by jury to hear all issues of fact.

4. For such other and further relief as this Court deems just and proper.

## COUNT II – GROSS NEGLIGENCE

31. Plaintiff re-alleges Paragraphs 1 through 26 and incorporates the same herein by reference.

32. Defendant FCS had a duty to ensure that its hood and duct cleaning work was performed in a good, safe and workmanlike manner.

33. The fire and damages referred to above were caused by Defendant FCS's wanton conduct and conscious or reckless disregard to the rights and safety of Plaintiff's subrogor in, among other things:

a) Recklessly, wantonly and willfully failing to inspect and clean the duct work to ensure that it was free of combustible materials;

b) Recklessly, wantonly and willfully failing to ensure that the work was performed properly and completely;

c) Recklessly, wantonly and willfully failing to take the necessary precautions to prevent a fire from occurring;

d) Recklessly, wantonly and willfully creating or permitted dangerous conditions to exist at the restaurant;

e) Recklessly, wantonly and willfully failing to comply with all applicable national, state and local fire codes and/or standards, including the North Carolina Fire Code and NFPA 96;

f) Recklessly, wantonly and willfully failing to warn the restaurant of the fire hazard posed by the excessively grease-laden ductwork; and

g) otherwise acting recklessly, wantonly and willfully under the circumstances.

34. By reason of the aforesaid gross negligence, wanton, and willful conduct by Defendant FCS and its employees, servants, and/or agents, Plaintiff sustained substantial damages, as hereinbefore averred, in an amount in excess of Three Million and no/100 Dollars ($3,000,000.00).

WHEREFORE, Plaintiff seeks relief as follows:

1. That this Court enter Judgment in favor of Plaintiff and against Defendant FCS in the amount in excess of Three Million and no/100 Dollars ($3,000,000.00), together with pre-judgment interest as allowed by law.

2. That Plaintiff recover its costs from defendant.

3. That this Court impanel a trial by jury to hear all issues of fact.

4. For such other and further relief as this Court deems just and proper.

## COUNT III –NEGLIGENT MISREPRESENTATION

35. Plaintiff re-alleges Paragraphs 1 through 26 and incorporates the same herein by reference.

36. Prior to Nobles retaining it, Defendant FCS supplied information to Nobles, to wit: that it would completely inspect and clean the entire hood and duct work at the restaurant pursuant to industry standards, including NFPA 96 (hereinafter referred to as "the Information").

37. In addition, after each monthly inspection and cleaning, Defendant FCS supplied information to Nobles, to wit: that had completely inspected and cleaned the entire hood and duct work at the restaurant pursuant to industry standards, including NFPA 96 (hereinafter referred to as "the Information").

38. Defendant FCS intended for Nobles to rely on the information it provided both before Nobles retained it and after each monthly inspection and cleaning.

39. The information provided by FCS both before Nobles retained it and after each monthly inspection and cleaning was false.

40. Defendant FCS failed to use reasonable care or competence in obtaining or communicating the information both before Nobles retained it and after each monthly inspection and cleaning.

41. Nobles actually relied on the information provided by FCS both before Nobles retained it and after each monthly inspection and cleaning.

42. By relying on the information provided by FCS both before Nobles retained it and after each monthly inspection and cleaning, Nobles believed that FCS had properly inspected and cleaned the entire hood and duct work at the restaurant pursuant to industry standards, including NFPA 96, and Nobles believed that the entire hood and duct work was properly inspected and

cleaned such that Nobles had no need to take further action to inspect or clean the hood and ductwork.

43. By reason of the aforesaid negligent misrepresentations by Defendant FCS and its employees, servants, and/or agents, Plaintiff Nobles sustained substantial damages, as hereinbefore averred, in an amount in excess of Three Million and no/100 Dollars ($3,000,000.00).

WHEREFORE, Plaintiff seeks relief as follows:

1. That this Court enter Judgment in favor of Plaintiff and against Defendant FCS in the amount in excess of Three Million and no/100 Dollars ($3,000,000.00), together with pre-judgment interest as allowed by law.

2. That Plaintiff recover its costs from defendant.

3. That this Court impanel a trial by jury to hear all issues of fact.

4. For such other and further relief as this Court deems just and proper.

## COUNT IV – BREACH OF CONTRACT

44. Plaintiff re-alleges Paragraphs 1 through 26 and incorporates the same herein by reference.

45. Prior to September 30, 2019, FCS verbally contracted with Nobles to conduct monthly inspections and chemical steam cleaning of the restaurant's kitchen hood and exhaust ductwork. Implicit in this agreement was FCS' duty to perform this work in a professional and workmanlike manner and in accordance with all applicable codes, laws, and industry standards.

46. FCS breached its verbal contract with Nobles by failing to properly conduct its monthly inspections and chemical steam cleaning of the restaurant's kitchen hood and exhaust

9

ductwork properly and in accordance with all applicable codes, laws, and industry standards, including but not limited to NFPA 96.

47. As a direct and proximate result of FCS' breach of contract with Nobles, plaintiff has suffered the previously described damages.

WHEREFORE, Plaintiff seeks relief as follows:

1. That this Court enter Judgment in favor of Plaintiff and against Defendant FCS in the amount in excess of Three Million and no/100 Dollars ($3,000,000.00), together with pre-judgment interest as allowed by law.

2. That Plaintiff recover its costs from defendant.

3. That this Court impanel a trial by jury to hear all issues of fact.

4. For such other and further relief as this Court deems just and proper.

This the 27th day of January, 2022.

SALTZ NALIBOTSKY

*/s/ Albert S. Nalibotsky*
Albert S. Nalibotsky, Esquire
NC Bar No.: 19478
Peter F. Asmer, Jr., Esquire
NC Bar No.: 19360
6101 Carnegie Blvd., Suite 440
Charlotte, North Carolina 28209
Phone: 704-910-2680
Email: analibotsky@s-nlaw.com
      pasmer@s-nlaw.com
*Counsel for Plaintiff*